## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IN RE EX PARTE APPLICATION OF IJK PALM LLC, | : | |
| | : | |
| Applicant, | : | CASE NO.  3:16-MC-171 |
| | : | |
| For Leave to Issue Subpoenas for the Taking of a Deposition and the Production of Documents Pursuant to 28 U.S.C. § 1782(a). | : | |
| | : | August 22, 2016 |
| | : | |

## IJK PALM'S RESPONSE TO THE ANHOLT RESPONDENTS' MOTION TO INTERVENE AND VACATE

John L. Kirtley
Zachary R. Willenbrink
Godfrey & Kahn, S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI  53202-5615
Tel:  414-273-3500
Fax:  414-273-5198
jkirtley@gklaw.com
zwillenbrink@gklaw.com

Frank J. Silvestri, Jr. (ct05367)
Verrill Dana LLP
33 Riverside Avenue
Westport, CT  06880
Tel:  203-222-0885
Fax:  203-226-8025
fsilvestri@verrilldana.com

*Of Counsel*

*Counsel for Applicant IJK Palm LLC*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................ i

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ........................................................................................................2

      The Parties .........................................................................................................................3

      Factual Background at the Time of Filing § 1782 Application ..........................................4

      Events Occurring After Initial Filing of § 1782 Application..............................................5

ARGUMENT .............................................................................................................................5

      The Anholt Respondents' Motion to Intervene and Challenge to Magistrate Judge
      Martinez's Authority.........................................................................................................6

      The § 1782 Application Remains Viable Even During the Cayman Island Liquidation
      Proceeding.........................................................................................................................6

      IJK Palm's Application Satisfies Each of the § 1782 Requirements..................................8

A.      IJK Palm's Planned Cayman Islands Action is Reasonably Contemplated ......................9

B.      The Bermuda Entities are "Found" Within the District of Connecticut ...........................13

C.      The Discretionary Factors All Weight in Favor of Granting IJK Palm's § 1782
      Application........................................................................................................................14

D.      Regardless of Whether the Liquidators Bring claims Against the UOL Board of
      Directors, IJK Palm is Entitled to § 1782 Discovery.......................................................15

CONCLUSION.........................................................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Application of Consorcio Ecuatoriano de Telecomunicaciones S.A.*,
  747 F.3d 1262, 1269 (11th Cir. 2014) ............................................................. 11, 12

*Bravo Express Corp. v. Total Petrochemicals & Refining U.S.*
  613 F. App'x 319, 323 (5th Cir. 2015) ................................................................. 10

*Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*,
  798 F.3d 113, 117 (2d Cir. 2015) ............................................................. 7, 15, 16

*Chevron Corp. v. Berlinger*
  629 F.3d 297 (2d Cir. 2011) ................................................................................... 6

*Fargro v. Godfrey*
  [1986] 1 WLR 1134 .................................................................................................. 7

*In re Edelman*
  295 F.3d 171, 180 (2d Cir. 2002) ...................................................................... 7, 13

*In re Godfrey*
  526 F. Supp. 2d 417, 419-22 (S.D.N.Y. 2007) ..................................................... 13

*In re Microsoft Corp.*
  428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006) ......................................................... 14

*In re Sphinx Group*
  [2014] (2) CILR 131 ¶¶ 41-48 ..................................................................... 7, 14, 15

*Intel Corp. v. Advanced Micro Devices*
  542 U.S. 241, 256–66 (2004) ........................................................................ 2, 9, 15

*Mees v. Buiter*
  793 F.3d 291, 295–96, 298–301 (2d Cir. 2015) ................................................... 10

*Norex Petroleum, Ltd. v. Chubb Ins. Co.*
  384 F. Supp. 2d 45, 54 (D.D.C. 2005) ................................................................. 14

*Thomas v. Arn*
  474 U.S. 140, 154 (1985) ......................................................................................... 6

**Other Authorities**

28 U.S.C. § 1782(a) .................................................................................................... 2

IJK Palm LLC (hereinafter "IJK Palm"), by and through its attorneys Frank Silvestri, Jr., of Verrill Dana LLP, and John Kirtley and Zachary Willenbrink, of Godfrey & Kahn, S.C., hereby files this response to the Anholt Respondents' Motion to Intervene and Vacate. (Docket #16.)

## PRELIMINARY STATEMENT

In a swift and seemingly-orchestrated series of maneuvers, the debtholders of United Oils Limited, SEZC ("UOL"), led by the Anholt Respondents, effectively stripped all of UOL's equity for themselves. It is likely they did so in conjunction with UOL's board of directors (many of whom are debtholders themselves). To accomplish this coup, the UOL board first, and for no legitimate reason, allowed UOL to default on its debts after failing to pursue all legitimate avenues for alternative financing or sale. This prompted the debtholders to foreclose on UOL's only—but extremely valuable—assets, two palm oil plantations located in Peru. Thereafter, the debtholders credit-bid their debt in an opaque and rushed foreclosure sale in Peru in order to acquire the plantations far below market value. As a result of this series of events, the debtholders now own the plantations outright, while the equity owners of UOL are left holding nothing more than the shell of a company lacking any assets. All of these events occurred within an extremely short window of approximately six months.

Indeed, within the time since IJK Palm originally filed its § 1782 Application, the debtholders have executed the *entire* foreclosure sale process; almost the entire board of UOL has been disbanded, leaving only one member; and that sole remaining member has voted to place UOL into liquidation. To repeat: all of those very significant events occurred within the two months after IJK Palm filed its § 1782 Application here.

This hurried pace—typical of the entire process—has forced IJK Palm to uncommon measures to protect its interests, including the § 1782 Application that Magistrate Judge Martinez ordered should be granted, which the Anholt Respondents now seek to set aside.

Under 28 U.S.C. § 1782(a), IJK Palm is entitled to seek discovery of individuals and entities found in the United States for purposes of use in a foreign proceeding, such as IJK Palm's planned actions in the Cayman Islands. Magistrate Judge Martinez agreed and entered a thorough order granting the § 1782 Application. IJK Palm then served its discovery requests on the targets it identified in its application: Kattegat Limited ("Kattegat"); Anholt Services (USA), Inc.; Anholt Capital Partners (USA), Inc.; Anholt (USA) LLC; Anholt Investments Ltd. (collectively, "the Anholt entities"); Southern Harvest Partners, L.P. ("Southern Harvest"); I. Joseph Massoud; and Rudolph Krediet. Some, but not all, of those individuals and entities[1] have now filed a Motion to Intervene and Vacate, attacking Magistrate Judge Martinez's order.

The Anholt Respondents challenge Magistrate Judge Martinez's order primarily on the basis of (1) facts that did not occur until after the issuance of that order, and (2) a mischaracterization of Cayman Islands law. The remainder of their argument, relating directly to the test for § 1782(a) discovery announced by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), also fails. For these reasons, IJK Palm requests that the Court deny the Anholt Respondents' Motion to Intervene and Vacate and, instead, adopt what it should treat as Magistrate Judge Martinez's report and recommendation in favor of granting IJK Palm's § 1782 Application.

---

[1] For reasons that will be more fully discussed in the body of this brief, only Anholt Services (USA), Inc.; Anholt Capital Partners (USA), Inc.; Anholt (USA) LLC; I. Joseph Massoud; and Rudolph Krediet (collectively, the "Anholt Respondents" or "Anholt") have responded.

## STATEMENT OF FACTS

IJK Palm relies primarily on the statement of facts and supporting declarations it included in its brief in support of its § 1782 Application. (Docket #1, Ex. 2.) In their brief supporting their Motion to Intervene and Vacate, the Anholt Respondents do not specify any major disagreements with IJK Palm's statement of the facts. Rather, and as will be discussed further, the Anholt Respondents focus on events that occurred after IJK Palm originally filed its § 1782 Application. (*See* Docket #17 at 4-5, 6-7 (discussing the Cayman Islands liquidation proceedings and Magistrate Judge Martinez's order).)

### The Parties

Although not a party to this action, UOL is perhaps the most important entity involved. UOL is a limited partnership registered in the Cayman Islands; it was established for the purpose of controlling palm oil plantations and related assets in Peru. (Schlidt Decl. ¶ 13, Ex. O.)

The parties to this § 1782 action, meanwhile, can be separated into three groups. First, there is IJK Palm, which invested in UOL via Palm Investment Partners Limited ("PIP"). (Docket #1, Ex. 4 ("Schlidt Decl.") ¶ 12, Exs. M, N; Docket #18 ("Decosimo Decl.") ¶ 10.) Second, there are the Anholt Respondents. This group, which is responsible for filing the Motion to Intervene and Vacate, consists of several related individuals and entities, all of which are involved in businesses that previously held the debt of UOL and, upon information and belief, now partially own the Peruvian assets that previously belonged to UOL. (*See, e.g.*, Docket #16 (filed by the Anholt Respondents); Schlidt Decl. ¶ 12, Exs. M, N; Decosimo Decl. ¶ 23 (describing the foreclosure process that, by now, has likely resulted in the ownership of the Peruvian assets by UOL's former debtholders).) Third, there are the Bermuda Entities. This group, which consists of other entities within the Anholt Respondents' family of businesses, did not join in the Motion to Intervene and Vacate even though they were named in the Application

3

and served with subpoenas. (*See* Docket #16; #17 at 18-20 (although the Bermuda Entities have not, themselves, filed the Motion to Intervene and Vacate, the Anholt Respondents argue on their behalf that they are not "found in" the district of Connecticut).) The Anholt Respondents and Bermuda Entities appear to be fully aligned in interest, and occasionally IJK Palm will refer to one or more of them generally as "Anholt."

<u>**Factual Background at the Time of Filing § 1782 Application**</u>

Again, IJK Palm notes that it relies more fully on its statement of facts and the declarations associated with its § 1782 Application. (Docket #1, Ex. 2 at 1-11; Ex. 3 ("Payne Decl."); Ex. 4 ("Schlidt Decl.").)

To summarize, IJK Palm alleges that UOL defaulted on its debt obligations as a result of a series of likely-fraudulent activities by the UOL board of directors. As a result of that default, Anholt—acting on behalf of all debtholders of UOL—foreclosed upon the only meaningful assets of UOL: its palm oil plantation in Peru and related assets. The related sale apparently finished in July of 2016, following a rushed and obscured bidding process. (Decosimo Decl. ¶ 23; Second Schlidt Decl. ¶ 2.) IJK Palm understands that the debtholders acquired the plantations at that auction, in exchange for forgiveness of their debt, alone. (Second Schlidt Decl. ¶ 2.)

The effect of that foreclosure sale is to give the debtholders, including Anholt, full ownership of the plantations—not subject to any previously-existing equity. This is extremely concerning, because the plantations are worth a substantial amount of money, which IJK Palm has reason to believe is between $80 million and $120 million (and possibly even more). The debtholders, meanwhile, were able to acquire the plantations for only the value of their debt of approximately $50 million. That vast gulf between the purchase price and the estimated value—$30 million, and possibly much more—should rightly belong to the UOL equity holders.

As a result, IJK Palm intends to file a lawsuit in the Cayman Islands on behalf of UOL against its board of directors. Because of the high pleading standards applicable in that country, IJK Palm filed the § 1782 Application at issue, seeking to first obtain discovery in the United States to support its claims. (*See generally* Docket #1, Ex. 2; Payne Decl.)

Magistrate Judge Martinez granted IJK Palm's § 1782 Application, and the Anholt Respondents now move to intervene and vacate that order.

### Events Occurring After Initial Filing of § 1782 Application

The facts in this case are developing with lightning speed, and, as the Anholt Respondents correctly point out, there have been significant developments in the time since IJK Palm initially filed its § 1782 Application.

On June 22, 2016—more than a week after IJK Palm filed its § 1782 Application—the board of directors of UOL voted to place the company in liquidation. (Decosimo Decl. ¶¶ 25-26; Docket #1 (IJK Palm's motion, filed July 13, 2016).) The liquidators, of Grant Thornton Specialist Services (Cayman) Limited, petitioned the Cayman Islands court for a winding-up order several weeks later on July 12, 2016. (Decosimo Decl. ¶ 28; Second Schlidt Decl. ¶ 3, Ex. B.) Notice of the liquidation was published in the Cayman Islands Gazette on July 18, 2016. (Decosimo Decl. ¶ 28; Second Schlidt Decl. ¶ 4, Ex. C.) UOL is now officially in liquidation, and what is known as a "liquidation committee," that will help to advise the liquidators, is in the process of being established; PIP's director has requested to be a member of that committee, and IJK Palm will assist PIP's participation therein. (Second Schlidt Decl. ¶ 5.)

Magistrate Judge Martinez issued her order granting IJK Palm's § 1782 Application on July 13, 2016, after which the subpoenas were served and the Anholt Respondents filed the Motion to Intervene and Vacate now under consideration.

## ARGUMENT

IJK Palm will focus its briefing on the substantive issues raised by the Anholt Respondents in their brief. In so doing, it takes no issue with the Anholt Respondents' intervention and agrees that the District Court should review Magistrate Judge Martinez's order granting the § 1782 Application as a report and recommendation.

Additionally, given the substantial resources IJK Palm expended in preparing its § 1782 Application, it will not extensively re-hash the arguments of its initial supporting brief, except where necessary to respond to arguments raised by the Anholt Respondents. IJK Palm respectfully requests that the Court review its brief supporting its § 1782 Application. (Docket #1, Ex. 2).

### The Anholt Respondents' Motion to Intervene and Challenge to Magistrate Judge Martinez's Authority

The Anholt Respondents request permission to intervene. IJK Palm has no objection to that motion, although it believes that intervention would be superfluous because the Anholt Respondents have already been brought before the Court as respondents to the Application.[2]

The Anholt Respondents also argue that Magistrate Judge Martinez exceeded her authority when she granted IJK Palm's § 1782 Application. IJK Palm has reviewed the *Chevron Corp. v. Berlinger* case cited by the Anholt Respondents. 629 F.3d 297 (2d Cir. 2011). The case does, indeed, characterize an order granting § 1782 discovery as a "final adjudication" that is "immediately appealable," that would, accordingly, require an Article III judge to retain authority to enter judgment upon it. *See, e.g., Id.* at 306; *Thomas v. Arn*, 474 U.S. 140, 154

---

[2] IJK Palm's consent to the Anholt Respondents' motion to intervene is without prejudice to any claims against those respondents—Kattegat Limited, Southern Harvest Partners, LP, and Anholt Investments Ltd.—who were served but did not join in the Anholt Respondents' motion and have not appeared.

(1985). IJK Palm, therefore, urges that the Anholt Respondents' Motion to Vacate be "deemed to be a report and recommendation to the district judge." *New York Chinese TV Programs, Inc. v. UE Enterprises, Inc.*, 996 F.2d 21, 25 (2d Cir. 1993); *See also In re McCray, Richardson, Santana, Wise and Salaam Litigation*, --- F.3d ----, 2016 WL 4123852, at *3 (2d Cir. Aug. 2, 2016). It may then be decided by District Judge Chatigny, rather than by Magistrate Judge Martinez.

### The § 1782 Application Remains Viable Even During the Cayman Island Liquidation Proceeding

The Anholt Respondents' primary argument is based upon a faulty premise that does not account for Cayman Islands law. They argue that, because UOL is currently in liquidation, the liquidators are the only individuals entitled to bring a claim on the company's behalf. This, in turn, allegedly prevents the shareholders from maintaining a claim, and thus likewise would prevent any action in which IJK Palm might assert. But the argument does not account for recent Cayman Islands case law.

In 2014, the Cayman Islands Grand Court confirmed that shareholders can, in fact, bring a suit on behalf of a company (even one in liquidation) if the liquidator is unwilling to do so. *In re Sphinx Group* [2014] (2) CILR 131 ¶¶ 41-48.[3] (*See also* Second Payne Decl. ¶ 4, Ex. A.) In other words, in the event that the current liquidators of UOL decline to bring a claim on behalf of the company, its shareholders may proceed.

---

[3] The three cases that the Anholt Respondents cite to the contrary are all extraterritorial and were decided substantially prior to *In re Sphinx Group*. Moreover, *In re Sphinx Group* explicitly acknowledges all three cases and still arrives at its conclusion that shareholders may bring claims when a liquidator is unwilling to do so. Finally, one of the cases that the Anholt Respondents cite—*Fargro v. Godfrey* [1986] 1 WLR 1134—itself appears to acknowledge this possibility. (Docket #17 at 15 (quoting *Fargro* which states that "if [the liquidator is] unwilling, the aggrieved shareholder should sue in the name of the company subject to approval of the court and satisfactory indemnities for costs.").)

IJK Palm has, in fact, requested that the liquidators bring suit against the UOL board of directors and is very hopeful that the liquidators will do so. (Second Schlidt Decl. ¶ 6.) In that same letter, IJK Palm expressed its intention to bring a suit against the board of directors, and requested that the liquidators indicate as soon as possible whether they intend to bring a claim themselves. (*Id.*)

Clearly, if the liquidators choose not to bring claims against the board of directors, then under *Sphinx Group* shareholders may still bring claims on behalf of UOL—and IJK Palm would certainly do so and need discovery under § 1782 for that purpose. (*See, e.g.*, Second Schlidt Decl. ¶ 7; Second Payne Decl. ¶¶ 4-5.)

Additionally, even in the event that the liquidation remains ongoing or that the liquidators opt to bring claims, IJK Palm is still entitled to § 1782 discovery for several reasons. To begin, and as more fully described below in Subsection (D), IJK Palm would remain an "interested party" with the ability to "use" that discovery in either of those events. *Certain Funds, Accounts, and/or Investment Vehicles v. KPMG, LLP*, 798 F.3d 113, 121-22 (2d Cir. 2015). Moreover, neither of these events would strip IJK Palm's ability to pursue litigation against the past and present directors of PIP (the vehicle through which IJK Palm owns its UOL stock and which is not currently in liquidation). Recent events show that the past and possibly present directors of PIP may have violated their duties to the company and its shareholders, including IJK Palm. Throughout the post-default period, Bill Randall—the original director of PIP as well as a UOL boardmember and debtholder—inexplicably delayed taking several actions, damaging PIP and, thus, IJK Palm. (Second Schlidt Decl. ¶ 8.) He later stepped down from his role in PIP and was replaced by Zack Kembar. (*Id.*) In the weeks since IJK Palm filed its § 1782 Application, more facts have come to light regarding Messrs. Randall's and Kembar's actions regarding UOL's

default and aftermath, which indicate that both may have obstructed PIP's path to recovery. (*Id.*) This sort of obstruction, both prior to and potentially after IJK Palm's filing of its § 1782 Application, combined with the facts that both Messrs. Randall and Kembar are affiliated with another of UOL's debtholders (*id.*), have together convinced IJK Palm that it has viable claims against those two individuals in their capacity as PIP directors, and it will bring those claims after obtaining § 1782 discovery from the Anholt Respondents and Bermuda Entities that is sufficient to satisfy the Cayman Islands' heightened pleading standards. (*Id.*) Accordingly, even if IJK Palm's right to bring an action against UOL and its board were right now held exclusively by the liquidators in the UOL liquidation proceedings, IJK Palm nevertheless would still have a right to the same information for use in its claims against PIP's directors. Nothing in § 1782 requires that the information sought be discoverable relative only to a claim against those from whom it is sought.

### IJK Palm's Application Satisfies Each of the § 1782 Requirements

Contrary to the Anholt Respondents' next line of attack, and as more fully set forth in IJK Palm's initial brief, its § 1782 Application satisfies each of the requirements necessary to be entitled to § 1782 discovery.

As to the *prima facie* requirements, the Anholt Respondents themselves actually challenge only one. They argue that IJK Palm's planned Cayman Islands action is not reasonably contemplated, but for the extensive reasons that follow, it is clear that the action is, in fact, reasonably contemplated. They also argue that the *Bermuda Entities* are not found in the District of Connecticut, but do not disagree that they, themselves, are found therein. Finally, they mostly do not challenge that IJK Palm is an "interested party," except to the extent that they argue that IJK Palm might not be interested if it were seeking discovery to aid the liquidators; that argument fails for the reasons more fully discussed in Section D, below. But, certainly, in the

event that the liquidators opt not to bring claims on behalf of UOL, such that IJK Palm would

retain its ability to pursue litigation, there is not a single doubt that IJK Palm would be an

interested party.

Accordingly, the Court will need to look to the balancing test described in *Intel*, the

factors of which weigh in favor of adopting Magistrate Judge Martinez's order and granting IJK

Palm's § 1782 Application.

**A.      IJK Palm's Planned Cayman Islands Action is Reasonably Contemplated**

As the Supreme Court held in *Intel Corp. v. Advanced Micro Devices*, a foreign action

does not need to be pending—only reasonably contemplated—to support discovery under

§ 1782. 542 U.S. 241, 258 (2004).

IJK Palm is past that point of reasonable contemplation. As the Anholt Respondents

acknowledge, IJK Palm has already retained Cayman Islands counsel (not to mention counsel in

Wisconsin and Connecticut). (Second Payne Decl. ¶¶ 1-2.) Moreover, IJK Palm has paid that

counsel a significant retainer fee so that it stands at the ready to file a lawsuit in the Cayman

Islands on IJK Palm's behalf once discovery is made available, either against both the UOL and

PIP boards or just the PIP board alone. (Second Payne Decl. ¶ 2.) In fact, the substantial legal

fees relation to these events case have required IJK Palm to schedule a capital call to fund the

rest of this anticipated battle. (Second Schlidt Decl. ¶ 9.) IJK Palm has also performed extensive

research to prepare for its claims, as evidenced by the materials it submitted in support of its

application (*see* Docket #1), and made clear to the liquidators its intent to file an action in the

Cayman Islands, (Second Schlidt Decl. ¶ 6). In short, with three sets of lawyers, an upcoming

draw-down on capital to pay for this fight, extensive research, and having announced its intent to

the liquidators, IJK Palm does not believe there is much more that it could do to evidence that its

contemplation of filing a suit is "reasonable."

10

The same sort of indications have satisfied at least two circuit courts, including the Second Circuit. The Second Circuit, in *Mees v. Buiter*—which the Anholt Respondents did not cite in their brief—vacated and remanded a district court's denial of a § 1782 application. 793 F.3d 291, 295-96, 298-301 (2d Cir. 2015). It held that the applicant had "satisfied § 1782's 'for use' requirement by showing that the material she seeks are to be used at some stage of a foreign proceeding that was within reasonable contemplation at the time of the proceedings below." *Id.* at 301. At the time of the proceedings below, the applicant requested discovery only on the basis of it being "part of [an] investigation" into a claim, and "to prepare for the prosecution" thereof; she also provided an affidavit of foreign counsel describing the difficult pleading standards in the Netherlands. *Id.* at 295-96. That seems to have been enough to satisfy the Second Circuit, which assumed that the applicant was reasonably contemplating a suit. *Id.* at 299 n.11 (also noting that while the § 1782 denial was on appeal, the applicant instituted an action in the Netherlands, so the issue of "reasonable contemplation" would likely have been moot upon remand to the trial court). And if that is true, IJK Palm contends that its similar—and perhaps even more definite—representations, supported by its Cayman Islands attorney's declarations, should certainly be enough.

The Fifth Circuit's decision in *Bravo Express Corp. v. Total Petrochemicals & Refining U.S.*, supports the same conclusion. There, reasonable contemplation was satisfied by: a foreign attorney's statement that a lawsuit would "be imminently filed" in the foreign jurisdiction; a detailed statement of the facts; and the mere preparation—"intended" but not even filed—of a claim. 613 F. App'x 319, 323 (5th Cir. 2015). There is little substantive difference between the applicant's representations in that case and IJK Palm's.

Finally, IJK Palm's application also meets the reasonable contemplation standard applied by the Eleventh Circuit in *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1270 (11th Cir. 2014). In that case, the applicant satisfied the standard simply by conducting internal audits, declaring that it "contemplate[d]" bringing a civil action in Ecuador, and representing the heightened pleading standards of that country. *Id.* at 1271. Again, in substance, this is exactly the same as what IJK Palm has presented. The only substantive difference is the fact that the applicant in *Consorcio Ecuatoriano* conducted an internal audit. *Id.* IJK Palm should not be punished simply because it has limited internal files (indeed the evidence of wrongdoing is likely locked within the wrongdoers' own emails and communications); in any event, IJK Palm has conducted extensive *external* research, as evidenced by its extensive material supporting its initial application.

The Anholt respondents try to distinguish the *Consorcio Ecuatoriano* case on the basis that an arbitration was pending between the parties at the time the § 1782 application was filed, but the Eleventh Circuit *explicitly rejected* its reliance on that theory. *Id.* at 1269-70. The applicant argued that the evidence it sought would be used both "in reasonably contemplated civil collusion proceedings that it may file against two of its former employees; and [in] the arbitration between the parties [that] is… already pending." However, the court focused only on the contemplated civil proceedings, stating that: "Because we agree that a proceeding exists under the former theory [the civil proceedings], we need not address the latter [the arbitration]."

The Anholt Respondents' various criticisms to the contrary do not change that fact. They argue that "IJK Palm could have taken steps to issue a bare-bones statement of claim in the Cayman court…" whereafter the defendants would notify of their intent to defendant and "IJK Palm would then have been required to apply for leave of the Cayman court to continue its

derivative claim with a supporting affidavit spelling out the detailed facts supporting its claim." (Docket #17 at 16-17.) In other words, the Anholt Respondents are arguing that IJK Palm could have made a meaningless gesture—filing a bare-bones claim—after which it would have been put to the exact same heightened pleading standards as IJK Palm and its Cayman Islands counsel originally outlined. (*See* Docket #1, Ex. 2 at 13-14; Payne Decl. ¶ 4.) It is unclear why this futile effort would do anything more to establish IJK Palm's reasonable contemplation than funding its three sets of attorneys going forward with a capital call. *Cf. Bravo Express*, 613 F. App'x at 323 (finding reasonable contemplation where claim had allegedly been prepared on limited information, but *was not filed*).

In the same vein, any questions about the logistics of IJK Palm's eventual claims are entirely reasonable. IJK Palm acknowledges that, at this point, it is very difficult to determine whether it or PIP would be the plaintiff in an action against the UOL board. Why is that the case? Because PIP's former director potentially was involved in the collusion that led to these events— a point that very well may be supported by the discovery in the Anholt Respondents' possession. In any event, IJK Palm has two additional options: (1) to file the suit against the UOL board on its behalf, as a double derivative action, as its Cayman Islands attorneys believe is a viable option; or (2) as already mentioned above, to file claims against PIP's former and current directors. (Second Payne Decl. ¶ 3.) Simply because there are questions about how IJK Palm would proceed—questions that stem from the fact that IJK Palm is the victim in this situation and that would probably be answered with even limited discovery—cannot change the fact that IJK Palm *will* file an action in some form.

In short, IJK Palm's planned civil action in the Cayman Islands is reasonably contemplated, in spite of the criticisms leveled by the Anholt respondents, and consistent with the prevailing standards of the Second, Fifth, and Eleventh Circuits.

**B.      The Bermuda Entities are "Found" Within the District of Connecticut**

With regards to which parties are "found" within the District of Connecticut, IJK Palm must first point out that the Anholt Respondents do not disagree that they, themselves, are in fact found in Connecticut. (Docket #17 at 18-20.) They argue only that the Bermuda Entities are not found therein. (*Id.*) That conclusion, however, is inconsistent with Second Circuit case law, which emphasizes the "broad" and "liberaliz[ed]" interpretation that should be applied to § 1782 applications. *See In re Edelman*, 295 F.3d 171, 180 (2d Cir. 2002).

In *Edelman*, the Second Circuit pointed out that there had been a "liberalizing trend" in Congress' amendments to § 1782, and that "Congress has expressed as its aim that the statute be interpreted broadly." 295 F.3d at 180. The defendants propose that the Bermuda Entities must be subject to personal jurisdiction in Connecticut to be "found" therein. (Docket #18 at 18-19.) For this proposition, they cite *Edelman*, 295 F.3d at 179, as well as *In re Godfrey*, 526 F. Supp. 2d 417, 419-22 (S.D.N.Y. 2007). Although the court in *Edelman* did refer to "well-settled case law on territorial jurisdiction," it distinguished between jurisdiction for purposes of imposing liability and jurisdiction for purposes of providing discovery. 295 F.3d at 178-79. It relied on the provision of the then-current version of Fed. R. Civ. P. 45(b)(2) that "a subpoena may be served at any place within the district of the court by which it is issued,"[4] in holding that a French national temporarily visiting New York was properly served there with a subpoena issued by the District Court for the Southern District of New York. *Edelman*, 295 F.3d at 178-79.

---

[4] Rule 45(b)(2) now states, "A subpoena may be served at any place within the United States."

Yet, even if *Godfrey* correctly imposes a stricter rule, then IJK Palm submits that the Bermuda entities have engaged in the sort of continuous and systematic activities in Connecticut that are sufficient for personal jurisdiction here. For instance, Mr. Krediet manages all of Southern Harvest's operations from the Anholt offices in Connecticut; the same can be said of Mr. Massoud's evaluation and management of "Kattegat's interests globally" from Anholt's Connecticut offices, and his operation of Anholt Investments Limited for that same purpose. (*See, e.g.* Schlidt Decl. Exs. C-E, J). These significant activities, in combination with the broad standard discussed in *Edelman*, support a finding that the Bermuda Entities are found in Connecticut.

**C.     The Discretionary Factors All Weigh in Favor of Granting IJK Palm's § 1782 Application**

Again, IJK Palm stands on the arguments it made in its initial memorandum, but will nonetheless respond to the limited points raised by the defendants in this regard.

*First*, the Anholt Respondents do not acknowledge the actual purpose of the discovery that IJK Palm seeks. They argue that, because Mr. Krediet is a potential party to the Cayman Islands action, the discovery will be available in that action. (Docket #17 at 21). But that puts the cart before the horse—it assumes that IJK Palm's action won't first be dismissed at the pleading stage, which is the precise basis for IJK Palm's application for § 1782 discovery. Neither of the cases cited by the Anholt Respondents dealt with the situation presented here in which the discovery is necessary to clear the initial pleading hurdle. *See In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006); *Norex Petroleum, Ltd. v. Chubb Ins. Co.*, 384 F. Supp. 2d 45, 54 (D.D.C. 2005). Accordingly, this criticism is inapplicable.

*Second*, while the Anholt Respondents contend that IJK Palm's discovery requests are unduly burdensome, they have not specified any way to narrow them, let alone attempted to meet and confer with IJK Palm's attorneys for the purpose of doing so.

*Third and Fourth*, the Anholt Respondents' argue that IJK Palm's § 1782 Application is either improper in light of the proceedings underway abroad or an attempt to circumvent Cayman Islands restrictions on discovery during liquidation; in doing so, the Anholt Respondents essentially rehash their argument regarding liquidation that IJK Palm has already dispatched. In particular, the Anholt Respondents' argument misses the fact that the Grand Court's *Sphinx Group* case specifically states that a shareholder may bring suit if the liquidator declines to do so. [2014] (2) CILR 131 ¶¶ 41-48. In that case, a claim against UOL would be viable despite the liquidation, and would support the § 1782 Application just the same.

**D.      Regardless of Whether the Liquidators Bring Claims Against the UOL Board of Directors, IJK Palm is Entitled to § 1782 Discovery**

The Anholt Respondents' final argument is that IJK Palm would not be entitled to § 1782 discovery in the event that the liquidators bring claims against the UOL board.

As already mentioned, this argument may simply be irrelevant, because if the liquidators decline to bring claims, the shareholders retain that ability, pursuant to *Sphinx Group*, [2014] (2) CILR 131 ¶ 41-48.

However, in the event that the liquidators do bring claims, IJK Palm would still be entitled to discovery under § 1782. The Anholt Respondents argue that IJK Palm would not be an "interested person" and could not "use" the discovery it obtained, and thus would not satisfy § 1782's *prima facie* requirements. However, the primary case they cite—the Second Circuit's decision in *Certain Funds, Accounts and/or Investment Vehicles v. KPMG*—belies that assertion.

16

798 F.3d 113 (2d Cir. 2015). In that case, the Second Circuit acknowledged that a person may

not need the right to present evidence in a tribunal to be considered an "interested person":

> the *Intel* Court did not state that such rights were necessary for an
> applicant to constitute an "interested person," appearing to find
> that *"participation rights" such as those possessed by the*
> *applicant there qualified it as an interested person "within any fair*
> *construction of that term."* Moreover, in rejecting *Intel*'s argument
> that "interested person[s]" under the statute must be "litigants" or
> formal parties to a proceeding, the Court cited with approval the
> expansive definition provided by Hans Smit, a leading academic
> commentator on the statute who played a role in its drafting.
> Professor Smit maintained that the phrase "any interested person"
> is "intended to include not only litigants before foreign and
> international tribunals, but also foreign and international officials
> as well as any other person ... [who] merely possess[es] *a*
> *reasonable interest in obtaining the assistance.*"

*Certain Funds*, 798 F.3d at 119 (emphasis added) (citations omitted). The "use" requirement

appears to be the flip side of the same coin, as the *Certain Funds* court acknowledged that, if a

party has an ability to participate and use information in its possession during a proceeding, then

that party likely could participate. *See id.* ("the role of a creditor under the relevant jurisdiction's

law might confer certain procedural rights that allow the creditor to participate and submit

evidence in the proceeding."). In that regard, it cited a portion of the U.S. Bankruptcy Code as

something that might confer a creditor with interested party status, because under that law "a

creditor… may raise and may appear and be heard on any issue in a case under this chapter." *Id.*

(quoting 11 U.S.C. § 1109(b)).

    IJK Palm has precisely that sort of right under the Cayman Islands Companies Winding

Up Rules (the "Rules"). Those Rules authorize the creation of a Liquidation Committee, in

which equity holders may participate as "contributories." (Second Payne Decl. ¶ 6 (citing

Companies Winding Up Rules O. 9, r. 1(6)).) Indeed, the liquidators in this case have called for

the participation of contributories, and PIP has applied to participate therein with the assistance

of IJK Palm. (Second Schlidt Decl. ¶ 5.) Members of the Liquidation Committee have the right to indicate their concerns to the liquidators, after which the liquidators must report those concerns to the entire committee. (Second Payne Decl. ¶ 6 (citing Companies Winding Up Rules O. 9, r. 4(1)).) More important, the liquidators would solicit the views of the committee on matters such as whether the liquidators should bring claims against the insolvent company's board of directors. (Second Payne Decl. ¶ 6 (citing Companies Winding Up Rules O. 9, r. 5).)[5] Thus, even while the liquidators are deciding whether to bring claims against the UOL board or after it decides to do so, IJK Palm remains an interested party and will use the evidence it obtains in discovery from the Anholt Respondents and Bermuda Entities.

Finally, and as more fully described on pages 8 and 9, *supra*, IJK Palm also retains claims against PIP's directors. UOL's liquidation has no effect, whatsoever, on those claims, and IJK Palm is accordingly still entitled to discovery relevant to those claims pursuant to § 1782.

## CONCLUSION

For the foregoing reasons, the Court should adopt Magistrate Judge Martinez's order, which the IJK Palm submits should be treated as a report and recommendation, and thus grant IJK Palm's § 1782 Application. Likewise, it should deny the Anholt Respondents' Motion to Intervene and Vacate, to the extent that such motion opposes IJK Palm's request for discovery. (IJK Palm does not object to the Anholt Respondents' right to intervene.)

---

[5] While the *Certain Funds* case rejected the contention that a party could obtain § 1782 discovery to assist in a Cayman Islands liquidation proceeding, it appears that it did so without evidence of the actual nature of the Cayman Islands liquidation proceedings. 798 F.3d at 122 (reaching its holding "[b]ecause the Funds failed to show any way that they could put before the foreign tribunals the information they sought to discover").

Respectfully submitted,

/s/ John L. Kirtley

John L. Kirtley
Federal Bar No. phv08300          Frank J. Silvestri, Jr. (ct05367)
Zachary R. Willenbrink            Verrill Dana LLP
Godfrey & Kahn, S.C.              33 Riverside Avenue
833 East Michigan Street, Suite 1800   Westport, CT  06880
Milwaukee, WI  53202-5615        Tel:  203-222-0885
Tel:  414-273-3500               Fax:  203-226-8025
Fax:  414-273-5198               fsilvestri@verrilldana.com
jkirtley@gklaw.com
zwillenbrink@gklaw.com

*Of Counsel*                      *Counsel for Applicant IJK Palm LLC*

16020453.8