```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

In Re Ex Parte Application of :
IJK PALM LLC for an Order     :
Pursuant to 28 U.S.C. § 1782  :   CASE NO.  3:16MC171(RNC)
to Conduct Discovery for Use  :
in a Foreign Proceeding       :
```

RULING ON INTERVENORS' MOTION TO VACATE
COURT ORDER GRANTING IJK PALM LLC'S APPLICATION
FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782
AND RECOMMENDED RULING ON IJK PALM'S APPLICATION

Intervenors Anholt Services (USA), Inc., Anholt Capital Partners (USA), Inc., Anholt (USA) LLC, I. Joseph Massoud and Rudolph Krediet (collectively "the Intervenors") filed a motion to vacate (doc. #16) this court's order (doc. #14) granting IJK Palm LLC's ("IJK Palm"), ex parte[1] application for an order pursuant to 28 U.S.C. § 1782 to take discovery for use in a foreign proceeding (doc. #1).  In its application, IJK Palm sought leave to serve subpoenas compelling eight non-party individuals and entities located in Connecticut to provide documents and deposition testimony for use in a foreign legal proceeding that IJK Palm plans to file in the Cayman Islands. For the reasons set forth below, the motion to vacate is

---

[1] The Second Circuit has recognized that "it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 ex parte.  The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)." Gushlak v. Gushlak, 486 Fed. App'x 215, 217 (2d Cir. 2012).

GRANTED, and I recommend that IJK Palm's application (doc. #1) be GRANTED.

I.  Background

IJK Palm intends to file a shareholder derivative lawsuit in the Cayman Islands in connection with an investment it made through Palm Investment Partners ("PIP") in United Oils Limited SEZC ("United Oils"), a palm oil producer operating in the Cayman Islands.  IJK Palm seeks discovery from: (1) Kattegat Limited ("Kattegat"); (2) Anholt Services (USA), Inc.; (3) Anholt Capital Partners (USA), Inc.; (4) Anholt (USA) LLC; (5) Anholt Investments Ltd (collectively, "the Anholt entities"); (6) Southern Harvest Partners, L.P. ("Southern Harvest"); (7) I. Joseph Massoud; and (8) Rudolph Krediet.  IJK Palm believes that Kattegat owns the Anholt entities, which are managed by Massoud, and that the Anholt entities own Southern Harvest, which is managed by Krediet. (Doc. #1 at 1-3.)

IJK Palm alleges the following facts.  It is an equity shareholder (through PIP) in United Oils.  Southern Harvest, acting on behalf of Kattegat and the Anholt entities, holds a large portion of United Oil's secured debt.  United Oils defaulted on its payment obligations to Southern Harvest and other secured debtholders.  As a result, the Anholt entities have attempted to obtain for themselves a large portion of the

2

equity in United Oils and have forced United Oils into liquidation.  IJK Palm contends that it "will likely see almost all of its investment vaporized and reconstituted as equity for the debtholders." (Doc. #1-3 at 7.)

IJK Palm intends to bring a lawsuit in the Cayman Islands against United Oils' CEO, Dennis Melka, as well as its board members, for breach of fiduciary duty, negligence, and fraud. To that end, IJK Palm already has hired attorneys in the Cayman Islands, extensively investigated the parties involved using publicly-available resources, and IJK Palm conducted a thorough review of its own files.  IJK Palm also intends to pursue litigation against the past and present directors of PIP (the vehicle through which IJK Palm owns its United Oils stock). IJK Palm's attorneys advised that the pleading standards in the Cayman Islands are very high and require, at the outset of the litigation, a submission of detailed evidence that proves the existence of fraud and mismanagement.  Without this submission, the complaint is subject to dismissal. (Doc. #1-3 at 13-15; doc. #30 at 10-13.)

On July 13, 2016, I granted IJK Palm's <u>ex parte</u> application.[2] (Doc. #14.) Thereafter, the Intervenors filed a

---

[2] United States District Judge Robert N. Chatigny referred the application to me. (Doc. #11.)

motion to intervene and motion to vacate my order. (Doc. #16.) I granted the Intervenors' motion to intervene (doc. #43) and held oral argument. (Doc. #47 and #48.)

II. Discussion

   A. The Intervenors' Motion to Vacate

The issue of a magistrate judge's authority to grant applications pursuant to section 1782 was not discussed in the initial application.  There is a split of authority as to whether a section 1782 order is a non-dispositive pre-trial discovery order within magistrate judge authority, 28 U.S.C. § 636(b)(1)(A), or a dispositive ruling subject to de novo review by a district court judge, 28 U.S.C. § 636 (b)(1)(B).  See, e.g., Vera v. Republic of Cuba, 802 F.3d 242, 247 (2d Cir. 2015)(dispositive); In re Judicial Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd., No. 2:14-CV-00797-GMN, 2015 WL 3439103, at *3 (D. Nev. May 28, 2015) (non-dispositive); In re Ex Parte Application of Pro-Sys Consultants & Neil Godfrey, Applicants, No. CV 16-MC-91016-PBS, 2016 WL 4154306, at *1 (D. Mass. Aug. 5, 2016)("[W]hether rulings on motions under § 1782 are considered dispositive — and therefore subject to de novo review by the district court — or non-dispositive — and therefore subject to a clear error standard — is an unsettled question.").

4

The parties agree that my original order granting IJK Palm's application should be vacated because a magistrate judge may issue such a ruling only in the form of a recommendation to a district judge. Recent caselaw makes clear that the parties are correct. See, e.g., Mangouras v. Squire Patton Boggs, 740 Fed. Appx. 757, 758 (2d Cir. 2018)(Summary Order). In Mangouras, the Second Circuit Court of Appeals explained:

> In general, orders granting applications for discovery under § 1782 are "considered final adjudications and are immediately appealable pursuant to 28 U.S.C. § 1291." In re Accent Delight Int'l Ltd., 869 F.3d 121, 128 (2d Cir. 2017) (citing Vera v. Republic of Cuba, 802 F.3d 242, 247 (2d Cir. 2015)). The reason such orders have been considered final adjudications is because issuance of the order "concludes all proceedings before the issuing district court." Vera, 802 F.3d at 247. As such, this Court has stated that an order that "constitutes the final resolution of a petition to take discovery in aid of a foreign proceeding" is immediately appealable under § 1291. Chevron Corp. v. Berlinger, 629 F.3d 297, 306 (2d Cir. 2011) (emphasis added).

Mangouras v. Squire Patton Boggs, 740 Fed. Appx. at 758.

Therefore, the Intervenors' motion to vacate (doc. #16) my order granting IJK Palm's application (doc. #14) is GRANTED.

B. IJK Palm's Section 1782 Application

The original ruling having been vacated, the court now must consider IJK Palm's request for discovery (doc. #1).

5

1. <u>Legal Standard</u>

IJK Palm seeks discovery from Kattegat, the Anholt entities, Southern Harvest, Massoud, and Krediet pursuant to 28 U.S.C. § 1782.  Section 1782 "allows United States courts to order discovery 'for use in a proceeding in a foreign or international tribunal.'" <u>Vera v. Republic of Cuba</u>, 802 F.3d 242, 247 (2d Cir. 2015).  It provides in pertinent part:

> (a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . .  To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.
>
> A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782(a).

"In ruling on an application made pursuant to section 1782, a district court must first consider the statutory requirements and then use its discretion in balancing a number of factors." <u>Brandi-Dohrn v. IKB Deutsche Industriebank AG</u>, 673 F.3d 76, 80 (2d Cir. 2012).  The statutory requirements of § 1782 are met where "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign

6

proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person."  "[O]nce the statutory requirements are met, a district court is free to grant discovery in its discretion." Schmitz v. Bernstein Liebhard & Lifshitz LLP, 376 F.3d 79, 83 (2d Cir. 2004).

Once the statutory requirements are met, the court, in its discretion, must balance the following factors: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264-65 (2004).  "[D]istrict courts must exercise their discretion under § 1782 in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar

7

means of assistance to our courts." Schmitz, 376 F.3d at 84 (internal quotation marks omitted). "In pursuit of these twin goals, the statute has, over the years, been given increasingly broad applicability." Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d at 80 (internal quotations and citation omitted).

   2. Discussion

   (a)  Statutory Factors

Here, the statutory requirements of § 1782 are satisfied. First, the entities subject to the discovery requests have established a principal place of business in Connecticut and the target individuals reside within the district.[3] The Intervenors

---

[3] Specifically, Kattegat is a limited partnership registered in Bermuda and operates primarily in Westport, Connecticut through its investment advisor, Anholt Services (USA), Inc. and its affiliates. Anholt Services (USA), Inc. is a corporation registered in Delaware, with its principal place of business at 61 Wilton Road, Westport, Connecticut 06880. It is a subsidiary of Kattegat and serves as its investment advisor and manager. Anholt Capital Partners (USA), Inc. is a corporation registered in Delaware with a principal place of business in Westport, Connecticut. It is a subsidiary of Anholt Services (USA), Inc. Anholt (USA) LLC is a limited liability company registered in Delaware, operating primarily in Westport, Connecticut as an affiliate of Anholt Services (USA), Inc. Anholt Investments Limited is a limited partnership registered in Bermuda, but operating primarily in Westport, Connecticut as an affiliate of Anholt Services (USA), Inc. Southern Harvest Partners, LP is a limited partnership registered in Bermuda. It is a subsidiary of Anholt Investments Limited and operates primarily in Westport, Connecticut as an affiliate of Anholt Services (USA), Inc. I. Joseph Massoud is a resident of the state of Connecticut, with a last known address of 5 Marc Lane, Westport, Connecticut 06880. He is the managing director of Anholt

do not contest that they are found within the district, but argue that other entities from whom discovery is sought, but who did not intervene, specifically, Kattegat, Southern Harvest Partners and Anholt Investments Limited (collectively "the Bermuda Entities"), all of which are registered in Bermuda, are not "found" within the district.  (Doc. #17 at 25-26.) To the contrary, although they are registered in Bermuda, they apparently conduct business through Messrs. Krediet and Massoud, both of whom reside in Connecticut.  "Mr. Krediet manages all of Southern Harvest's operations from the Anholt offices in Connecticut," and Mr. Massoud manages Kattegat's and Anholt Investments Limited's "interests globally from Anholt's Connecticut offices." (Doc. #30 at 18.) See In re Edelman, 295 F.3d 171 (2d Cir. 2002), in which the court explained:

> Moreover, the question of what it means to be found in a particular locale is already the subject of well-settled case law on territorial jurisdiction. In Burnham v. Superior Court of California, 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990) (plurality opinion), the Supreme Court authorized the exercise of personal jurisdiction based on nothing more than physical presence. See also Kadic v. Karadzic, 70 F.3d 232, 246-47 (2d Cir.1995) (upholding Southern District's exercise of personal jurisdiction over foreign national served with summons while physically

---

Services (USA), Inc.  Lastly, Rudolph Krediet is a resident of the state of Connecticut, with a last known address of 8 Outer Road, Norwalk, Connecticut 06854.  He is a partner in Anholt Services (USA), Inc. and is responsible for managing Southern Harvest Partners, LP. (Doc. #1, ¶¶ 4-11.)

>    present in Southern District). Given that this so-
>    called tag jurisdiction is consistent with due
>    process, we do not think that § 1782(a), which is
>    simply a discovery mechanism and does not subject a
>    person to liability, requires more.

Id. at 179.  In any event, there is no dispute that Messrs. Krediet and Massoud, from whom the discovery would be sought, reside in Connecticut.

Second, the discovery is for use in anticipated lawsuits in the Cayman Islands.  The Supreme Court has explained that the foreign proceeding need not be pending at the time of the § 1782 application, but must be "within reasonable contemplation."  See Intel, 542 U.S. at 259.  Although the intervenors contend that the lawsuits are not within reasonable contemplation (doc. #17 at 13-18), the record is to the contrary.

After IJK Palm filed its application, but before the Intervenors' filed their motion to vacate, UOL's Board voted to place the company in liquidation.  (Doc. #30 at 8.)  The intervenors argue that because UOL is in liquidation, IJK Palm may not bring a lawsuit.  (Doc. #38 at 4.) This appears to be incorrect. See In re Sphinx Group [2014] (2) CILR 131, a decision of the Cayman Islands Grand Court's Financial Services Division. (Doc. #32-1.)  In Sphinx, the Cayman Islands Grand Court confirmed that shareholders can bring a lawsuit on behalf a company in liquidation where the liquidator is unwilling to do

10

so. Id. at 133 (holding that "[w]here, however, the liquidator refused to sue, or consented to another party doing so, it was clear that the court had authority to authorize any person with a proven interest in the liquidation to pursue a claim in the company's name if they provide the necessary indemnity to the company."). (See also Doc. #32, Second Payne Decl., ¶ 4.)

Here, the liquidators are aware of IJK Palm's § 1782 application, and they support it. The liquidators "cannot afford to bring a § 1782 action independently." (Doc. #36 at 2 and Doc. #36-1, Schlidt Supp. Decl, ¶ 3.) Furthermore, the United Oils liquidation does not affect IJK Palm's "ability to pursue litigation against the past and present directors of PIP (the vehicle through which IJK Palm owns its UOL stock and which is not currently in liquidation.)" (Doc. #30 at 11.) IJK Palm intends to pursue claims against the past and present directors of PIP in the Cayman Islands "after obtaining discovery from the Anholt Respondents and the Bermuda Entities that is "sufficient to satisfy the Cayman Island's heightened pleading standards." (Doc. #31 at 3, Second Schlidt Decl, ¶ 8.)[4]

---

[4] Cf. Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P., 798 F.3d 113, 121 (2d Cir. 2015), in which the court denied a § 1782 application, holding that:

> Even assuming that the Funds have the ability to submit information to the Delegate, who can then decide whether

Third, as to the last statutory requirement, IJK Palm, as an equity shareholder (through PIP) of United Oils, is an "interested person" in the anticipated foreign litigation.

(b)  Intel factors

Because the statutory requirements are met, the court, in its discretion, must consider the four Intel factors: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government

---

or not to use that information, that does not establish that the information is "for use" in a foreign proceeding; it establishes, at best, that the Funds can furnish information in the hope that it might be used. That is no different from a third party providing information to a private litigant that it believes might be useful in a lawsuit, or a witness approaching a prosecutor's office claiming to have knowledge of a crime. Such information might be relevant or interesting to the recipient, but it is not "for use" in any proceeding in which the recipient is a party unless the recipient takes some further, independent action to introduce it.

Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P., 798 F.3d at 121 (emphasis in original). In the present case, however, as discussed above, IJK Palm has an independent right to use any information it might gather in litigation proceedings against United Oils and PIP.

or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. at 264-65.

A balancing of the Intel factors also weighs in favor of granting the application. First, only one individual, Krediet, from whom IJK Palm seeks discovery might become a participant in the foreign proceedings. IJK Palm does not anticipate naming any of the remaining targets of the discovery requests in the foreign proceedings. (Doc. #1-3 at 19.) Even if this factor could weigh against granting the application in light of Krediet's potential to become a participant in the proceeding against UOL, this does not end the court's balancing of the other Intel factors. See, e.g., In re Application of the Coal. to Protect Clifton Bay, Louis Bacon for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for use in Foreign Proceedings, No. 14MC258(DLC), 2014 WL 5454823, at *3 (S.D.N.Y. Oct. 28, 2014) ("Even assuming, however, that the first Intel factor can weigh against granting a petition . . . that factor does not weigh so strongly as to end the analysis.").

Second, there appears to be no legal barrier to the use of

13

the requested discovery in Cayman Island courts. (Doc. #1-4, Payne Decl., ¶¶ 5-6.) See, e.g., In re Platinum Partners Value Arbitrage Fund L.P., 583 B.R. 803, 816 (Bankr. S.D.N.Y. 2018) (holding that "far from being hostile to Cayman litigants seeking evidence under U.S. law, Cayman courts are in fact receptive to evidence obtained through U.S. discovery procedures, even if such evidence may not be discoverable under Cayman law.").

Third, IJK Palm's request does not conceal an attempt to circumvent foreign evidence-gathering rules.  Rather, the discovery is necessary to satisfy the stringent pleading standard in actions brought in the Cayman Islands alleging fraud and mismanagement. (Doc. #1-4, Payne Decl., ¶ 4; Doc. #32, Second Payne Decl., ¶ 5.)

Finally, the discovery sought is not unduly intrusive or burdensome.  IJK Palm indicates that although it has named eight subjects of the discovery requests, all of the discovery it seeks likely can be produced by the two named individuals: Massoud and Krediet. (Doc. #1 at 3-4.) The court's balancing of the Intel factors weighs in favor of granting IJK Palm's application.

### III. Conclusion

For these reasons, the Intervenors' motion to vacate (doc.

#16) my order granting IJK Palm's application (doc. #14) is GRANTED, and I recommend that the court GRANT IJK Palm's application for an order pursuant to 28 U.S.C. § 1782 to take discovery for use in a foreign proceeding (doc. #1).

Any party may seek the district court's review of this recommendation.  See 28 U.S.C. § 636(b) (written objections to proposed findings and recommendations must be filed within fourteen days after service of same); Fed. R. Civ. P. 6(a), 6(d) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Thomas v. Arn, 474 U.S. 140, 155 (1985); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992).  Failure to timely object to a magistrate judge's report will preclude appellate review.  Small v. Sec'y of Health and Human Serv., 892 F.2d 15, 16 (2d Cir. 1989).

SO ORDERED at Hartford, Connecticut this 30th day of January, 2019.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge